**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Gwen LaCanne,

Plaintiff,

v.

AAF McQuay Inc., d/b/a
McQuay International,

Defendant/Third-Party
Plaintiff,

and

Sheetmetal Workers International
Association, being sued as Sheetmetal
Workers Association AFL-CIO Local 480,

Third-Party Defendant.

Civil No. 00-1773 (DWF/AJB)

**MEMORANDUM**
**OPINION AND ORDER**

---

John D. Thompson, Esq., Rider, Bennett, Egan & Arundel, 2000 Metro Center, 333 South 7th Street, Minneapolis, Minnesota 55402, appeared on behalf of Third-Party Plaintiff.

Richard A. Miller, Esq. and Kelly A. Jeanetta, Esq., Miller & O'Brien, 1208 Plymouth Building, 12 South 6th Street, Minneapolis, Minnesota 55402, appeared on behalf of Third-Party Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on February 16, 2001, pursuant to Third Party Defendant Local 480's Motion to

FILED FEB 21 2001
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

Dismiss the Third-Party Complaint under Fed. R. Civ. P. 12(b)(6). In the complaint, Defendant/Third-Party Plaintiff AAA McQuay claims that if found liable to Plaintiff LaCanne, then McQuay should be entitled to contribution and/or indemnification from Third-Party Defendant Local 480 because of its "active, direct, and primary" liability. For the reasons stated, Third-Party Defendant Local 480's motion is granted.

**Background**

In July 2000, Plaintiff Gwen LaCanne brought suit against Defendant AAA McQuay Inc. ("McQuay") alleging sex discrimination and retaliation in violation of Title VII and the Minnesota Human Rights Act (MHRA), negligent retention and supervision, and battery. In conjunction with its answer, Defendant/Third-Party Plaintiff filed a third-party complaint against Third-Party Defendant AFL-CIO Local 480, the union of which Plaintiff LaCanne is a member.[1] Third-Party Plaintiff, while denying liability, claims that if liability were to be established, then "its liability would at most be passive, indirect, and secondary whereas the liability of Third-Party Defendant would be active, direct, and primary." Third-Party Plaintiff presents no additional allegations with respect to Third-Party Defendant's liability.

Within Plaintiff's complaint, there are two references to the union. The first is a factual allegation relating to the Union shop steward. After a meeting between Plaintiff, her supervisor, and the director of Human Resources, the union shop steward is alleged to have told Plaintiff that she "better be ready to take it in the back now from everyone because now one of our union

---

[1] Plaintiff filed an amended complaint on December 4, 2000. Defendant did not amend its answer nor its Third-Party Complaint. Moreover, the Amended Complaint did not contain any alterations as to the statements at issue here. Thus, the Amended Complaint does not affect the Court's analysis in any way.

brothers lost his job and it is all her fault and she better be able to take a lot of pressure from other union members." The second reference is an allegation stating:

> That Plaintiff reported the harassment to Defendant's union, some of which have supervisory responsibility at Defendant, on more than six (6) occasions. In response to her reports these supervisory employees lost the evidence of harassment that she presented to them including but not limited to: paper clips, rubber bands, plugs, comic strips, a list of 32 things directed at Plaintiff personally in a twelve day period. In addition, these supervisory employees stated that they would "not get involved because it was harassment and it would blow over," ignored, became angry at her, told Plaintiff to "forget it," and refused to provide the list to Defendant's Human Resources.

Plaintiff does not name Local 480 as a defendant.

**Discussion**

**1. Standard of Review**

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Nietzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

**2. Issues**

**a. Particularity of the Complaint**

Pursuant to Fed. R. Civ. P. 8(a), a third-party complaint should be pleaded with sufficient particularity so that the third-party defendant and the court are informed as to jurisdiction, any

claim upon which relief may be granted, and the nature of the relief being sought.[2] In this case, the Third-Party Plaintiff provided virtually no information in its complaint to explain the scope or nature of its claim. Rather, it appears to have relied on the Plaintiff's complaint and the allegations therein. It is superficially unclear for which of Plaintiff's claims McQuay is claiming a right of contribution and upon what basis. Within their submissions to and arguments before the Court, however, both third-parties focus on the two allegations relating to the union in Plaintiff's complaint and retold in the Court's background discussion above as providing some "particularity" for Third-Party Plaintiff's patently vague claim. The Court does not deem the Third-Party Complaint to be sufficiently particular. Given the parties' submissions and arguments, however, the Court is able and will proceed to make a sound and reasoned judgment on the substance of Third-Party Plaintiff's claims.

**b. Availability of Contribution or Indemnification**

**i. In General**

Even if McQuay's complaint is sufficiently particular, the Court must then evaluate whether the remedy of contribution or indemnification is properly sought. While the parties focus their dispute only on whether such remedies are available under the MHRA, the Court will address each of the underlying claims and the relevant appropriateness of the remedy being sought.

---

2 In pertinent part, Fed. R. Civ. P. 8(a) states as follows:

> A pleading which sets forth a . . . third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Indemnification is a remedy which would result in full reimbursement. *White v. Johnson*, 137 N.W.2d 674, 677 (Minn. 1965). In order for indemnity to be available, however, a contract must exist, either express or implied, requiring one party to reimburse the other. *Hendrickson v. Minnesota Power & Light Co.*, 104 N.W.2d 843, 847 (Minn. 1960) *overruled in part on other grounds by Tolbert v. Gerber Indus., Inc.*, 255 N.W.2d 362 (Minn. 1977). Contribution, on the other hand, is a remedy available when two or more entities are liable to the same plaintiff for the same injury, and to require only one wrongdoer to bear the entire burden of the judgment entered would be unfair. *See Northwest Airlines, Inc. v. Transport Workers Union of Am., AFL-CIO*, 451 U.S. 77, 86 (1981); Restatement (Second) of Torts § 886A (1979). In contrast with indemnification, contribution would result in recovery of a proportionate share. *White*, 137 N.W.2d at 677.

There is no evidence or allegation before the Court that a contractual relationship exists between McQuay and Local 480 which would provide for indemnification. There is also no evidence or argument before the Court that indemnification would be an appropriate *equitable* remedy. Moreover, Third-Party Plaintiff McQuay has refrained from arguing for such a remedy in its submissions and argument to the Court. Thus, the Court finds that to the extent that Third-Party Plaintiff is seeking indemnification, its claims must fail. The Court now evaluates Third-Party Plaintiff's claims for contribution.

**ii. Title VII**

The parties agree that there is no right of contribution under Title VII. *Northwest Airlines, Inc. v. Transport Workers Union of Am., AFL-CIO*, 451 U.S. 77, 93 (1981). Third-Party Plaintiff contends that the Supreme Court based its determination simply on the lack of a federal common law or statutory remedy of contribution, and thus, argues that this Court

should find differently under the MHRA. The Court, however, reads *Northwest* to have employed a much more extensive analysis of Title VII and the remedies it provides.

To determine whether the private right of contribution exists under Title VII, the *Northwest* court evaluated the language of Title VII, "its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies." *Id.* at 91 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). In support of its decision, the *Northwest* court noted the lack of an express provision providing such a right and the fact that employers are not members of the class intended to benefit from Title VII. Moreover, the court, construing relevant provisions most favorably to the employer, at best, found a remedy for *harm to an employer* by a union's wrongdoing. *Id.* at 93. "Such a remedy for a violation of the *employer's rights* would be entirely different from a right to compel the union to share the responsibility for a joint violation of a third party's rights." *Id.* (emphasis added). Given the Supreme Court's holding in *Northwest,* Third-Party Plaintiff's claim of contribution with respect to Plaintiff's claims under Title VII must fail.

**iii. MHRA**

The parties dispute, however, whether a right of contribution exists under the MHRA. McQuay contends that: (1) public policy dictates that all "bad actors" should be held responsible; (2) the union failed in its duty to process Plaintiff's grievances; and (3) the MHRA and Minnesota common law allow for a right of contribution because a standard of negligence is involved. On the other hand, Local 480 argues that the public policy concern at issue is the MHRA purpose to protect employees rather than employers and that the actions properly brought under the MHRA involve a standard of intentionality, thus precluding a right to contribution.

For purposes of making this argument, Local 480 has assumed that Plaintiff's claims are as they have been characterized by Third-Party Plaintiff.

There is no explicit contribution provision within the MHRA nor has any Minnesota court, state or federal, found such a right to exist.[3] Moreover, like Title VII, the purpose of the MHRA, in the context of employment, is to protect employees. Thus, the same conclusion can be drawn with respect to the MHRA as the Supreme Court drew with respect to Title VII. To the extent that any cause of action by the employer against the union exists, it could only be for the union's wrongdoing resulting in harm against the employer not the employee. There is no evidence or allegation before the Court that such harm to the employer has occurred. Even if the Plaintiff could have a cause of action against the union, such a claim cannot be simply imputed to the employer. Moreover, to the extent that the third-party complaint is based on the two allegations of union wrongdoing, then it is unclear to the Court why contribution would be sought when there is no evidence or law supporting an employer's responsibility for a union's breach of its own exclusive duty.

To the extent that the *Northwest* decision was impacted by the lack of a federal remedy of contribution, then the analysis under the MHRA should also include an evaluation of the state law remedy of contribution. *Underwriters at Lloyds of Minneapolis v. Smith*, 208 N.W. 13 (Minn. 1926), holds that contribution is an appropriate remedy for cases involving negligence.

---

[3] In *Carlson v. Independent Sch. Dist. No. 283*, 370 N.W. 2d 51, 53 (Minn. Ct. App. 1985), the court outlines the procedural history of the action brought by a group of teachers claiming sex discrimination under the MHRA. In the school districts' answer to the complaint, they alleged a counterclaim against the Minnesota Education Association, the state teachers' union, claiming contribution for the union's complicity in negotiating and acquiescing in the allegedly discriminatory contracts. The trial court dismissed the claim, and the Minnesota Supreme Court affirmed the action. There is no explanation, however, on what basis such action or affirmance was justified.

Moreover, Minnesota state law provides additional application of contribution in cases involving breach of warranty, unreasonable assumption of risk, products liability, and certain public health and environmental statutes. Minn. Stat. §§ 604.01, 604.02. There is no common law or statutory basis for a right to contribution on an intentional tort claim.

The parties dispute whether the MHRA implicates a standard of negligence or intentionality. Local 480 contends that, in order to establish liability under the MHRA, then a plaintiff must prove that a defendant acted with the intent to discriminate. To the contrary, McQuay argues that the MHRA operates under a negligence standard, particularly in the context of sexual harassment. Specifically, McQuay points to the language requiring employer liability to be based on whether it "knows or should know" as evidence of a negligence standard. Minn. Stat. § 363.01, subd. 41.

The very wrongdoing that McQuay alleges the Union should be held accountable for, however, is not sexual harassment, but rather, the intentional conduct of failing to file and process the Plaintiff's grievances.[4] McQuay's argument, therefore, is without a factual predicate of negligence, and Minnesota law is clear that no right of contribution exists for intentional wrongdoing. To the extent that McQuay is claiming Local 480 should be held responsible for the alleged sexual harassment, the Union had no duty to maintain a hostility-free work environment via hiring, retention, supervision, and discipline, regardless of whether the breach of

---

[4] During the hearing before the Court, the parties did not address the allegation relating to the union shop steward. To the extent that Third-Party Plaintiff's claims rest on that allegation, however, they must fail because a union cannot be held vicariously liable for the actions of a shop steward without evidence that they occurred within the scope of his or her union responsibilities, thus breaching the union's duty of fair and adequate representation. *Agosto v. Correctional Officers Benevolent Ass'n*, 107 F. Supp. 2d 294, 308 (S.D.N.Y. 2000).

such a duty is evaluated for negligence or intention. Nonetheless, the Court will address the parties' arguments.

The issue of whether or not a sexual harassment claim under the MHRA is evaluated under a standard of negligence or intentionality is somewhat convoluted, though a close analysis of its twists and turns lends support to the Court's previous conclusions. While the standard under which an employer's liability is evaluated arguably smacks of negligence, the harassing behavior for which it could be held liable must ultimately be intentional. Similarly, the behavior for which a union could be held liable as sexual harassment under the MHRA is its own intentional behavior. *See, e.g., Marquart v. Lodge 837, Int'l Ass'n of Machinists and Aerospace Workers*, 26 F.3d 842 (8th Cir. 1994) (holding employee had cause of action under Title VII against union for its failure to process sexual harassment complaint when complaints by male employees were promptly processed). Regardless of which predicate of liability is evaluated, intentional conduct is at issue and no right of contribution can then attach.

Moreover, because the predicates of liability for the union and the employer are distinct, contribution is wholly inappropriate. McQuay's reliance on the decision in *Rodolico v. Unisys Corp.*, 189 F.R.D. 245 (E.D.N.Y. 1999) is misplaced. The *Rodolico* court found a right of contribution under the New York Human Rights Law based upon the state law provision of a right to contribution in cases of intentional torts and the union's active negotiation with the employer resulting in the allegedly age discriminating contracts at issue. Unlike the instant case, New York law clearly provided for a right to contribution in cases involving intentional torts, and the potential liability of both the employer and union was based on the same underlying intentional conduct, i.e. negotiating the discriminatory contract. Even if the Plaintiff had brought a claim of sexual harassment against both McQuay and Local 480, their independent liability

would be for the breach of their respective duty(ies) to the Plaintiff and not responsibility for the other's wrongdoing.

For all of the reasons stated, the Court finds that Third-Party Plaintiff has no right to contribution under the MHRA.

**iv. Negligent Retention and Supervision**

If established, the Third-Party Defendant cannot be held liable via contribution for negligent retention or supervision by the Defendant-Employer. There is no evidence nor common knowledge to indicate that the union was involved in the hiring or supervision of McQuay employees. In fact, in its memorandum, the Third-Party Plaintiff fails to address this issue, apparently conceding that a claim of contribution is inappropriate with respect to Plaintiff's claims of negligent retention and supervision. Thus, to the extent that those claims were made, they must also fail.

**v. Battery**

Third-Party Plaintiff also fails to address its claim of contribution as to Plaintiff's claim of battery. Battery is an intentional tort. As discussed above, there is no common law or statutory basis in Minnesota for seeking contribution on a claim of intentional tort. Thus, Third-Party Plaintiff's claim for contribution on the claim of battery must also fail.

For the reasons stated, **IT IS HEREBY ORDERED THAT**:

1. Third-Party Defendant's Motion to Dismiss the Third-Party Complaint (Doc. No. 13 ) is **GRANTED**; and

2. Third-Party Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

Dated: February 21st, 2001

DONOVAN W. FRANK
Judge of United States District Court