**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Gwen LaCanne,

Plaintiff,

v.

AAF McQuay, Inc.,
d/b/a McQuay International,

Defendant.

Civil No. 00-1773 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Beth E. Bertelson, Esq., Bertelson Law Office, P.A., 101 Union Plaza, 333 Washington Avenue North, Minneapolis, MN 55401, appeared on behalf of the Plaintiff.

Angela Rud, Esq., Gray, Plant, Mooty, Mooty & Bennett, P.A., 3400 City Center, 33 South Sixth Street, Minneapolis, MN 55402 appeared on behalf of the Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on September 28, 2001, pursuant to Defendant's Motion for Summary Judgment. In the Complaint, Plaintiff alleges that Defendant violated Title VII and the Minnesota Human Rights Act with acts of sex discrimination and retaliation. Plaintiff also raises claims of battery, negligent retention, and negligent supervision. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## Background

Defendant AAF McQuay ("McQuay") is a company that manufactures and distributes commercial climate control equipment and systems, including large commercial air conditioning systems. Plaintiff Gwen LaCanne worked in Defendant's plant in Fairbault, Minnesota, from

OCT 30 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

1979 through 2001. Plaintiff worked as a brazier[1] in the coil department on the third shift, which typically went from midnight until eight o'clock in the morning.

While employed by Defendant, Plaintiff was a member of the Sheet Metal Workers International Association, AFL-CIO Local 480 ("the Union"). On behalf of its members, the Union negotiated and entered into a collective bargaining agreement that governed general terms of members' wages, hours, and general conditions of employment.

From 1985 until 2000, Plaintiff alleges that the environment at McQuay was sexually hostile and offensive.[2] Among other things, Plaintiff alleges that her co-workers repeatedly and nightly called her names including "bitch," "dumb fucking cunt," "frigid bitch," and "fucking bitch." Other incidents included Plaintiff's co-workers placing a rubber penis in her purse; throwing copper return bends at her crotch; placing copper fly cutting down the gap in her pants; placing sexual cartoons on the bulletin board; using "white-out" to put Plaintiff's name on the cartoons; and placing grease, mashed potatoes, flux, and meat fat in Plaintiff's gloves. Plaintiff alleges that these actions caused her to suffer repeated cuts and bruises. Plaintiff also alleges that one of the perpetrators of the activity was a supervisor.

In 1999, Plaintiff alleges that the harassment became more physical and dangerous. Co-workers began to kick Plaintiff in the behind and grab her waist. A co-worker once hit a coil that Plaintiff was welding with a hammer, causing Plaintiff to burn her stomach. On another occasion a co-worker's horseplay around Plaintiff's welding torch caused it to blow up in another co-worker's face.

---

[1] A brazier welds copper and metal products.

[2] Defendant does not dispute Plaintiff's alleged facts for purposes of this motion.

Plaintiff complained to management about the harassment and describes management's response as ineffective. Management's response took the form of verbal warnings, a ten-minute training session on sexual harassment, and an eight-hour suspension of one of the perpetrators.

Nonetheless, Plaintiff's co-workers harassed her more, and someone slashed her tires. Co-workers also called Plaintiff "troublemaker," "snitch," "squealer," and "bitch" and asserted that Plaintiff was "not bulletproof." Plaintiff's co-workers also refused to engage in conversation with Plaintiff, which on many occasions was necessary for completion of work assignments.

Plaintiff alleges severe emotional and physical damages as a result of the harassment. She no longer enjoys the social activities that she used to, and she is much more reserved and isolated. Plaintiff also suffers physical effects from the retaliation including lost weight, stomach cramps, diarrhea, and difficulty sleeping. Plaintiff has seen several doctors for treatment of depression. After leaving Defendant's employment, Plaintiff sought similar work at another factory, but she was unable to take the position because she had an anxiety attack while touring the plant, fearing that the harassment she endured at Defendant's plant would happen again.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and

inexpensive determination of every action.'" Fed. R. Civ. P. 1; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Krenik,* 47 F.3d at 957

**2. Issues**

**a. In General**

Plaintiff claims that Defendant violated Title VII and the MHRA by engaging in discrimination[3] and retaliation. 42 U.S.C. § 12201, *et seq.;* Minn. Stat. § 363.03, *et seq.*[4]

---

[3] For purposes of this motion, neither party briefed any issue relating to Plaintiff's claim of Title VII sex discrimination. At oral argument, Defendant asserted that Plaintiff conceded her claim of disparate treatment and sex discrimination under Title VII, yet Plaintiff denied this concession. Defendant did not direct the Court to any evidence in the record to support its assertion. Moreover, the Court reads Plaintiff's Complaint to assert a claim of discrimination based on sexual harassment and not sex discrimination as Defendant argued at hearing. The Court finds that Plaintiff has established a *prima facie* case of sexual harassment and thus declines to dismiss Count V of Plaintiff's Complaint

[4] The courts in this Circuit have consistently analyzed claims under the MHRA employment provision as analogous to the corresponding Title VII provision because of the substantial similarity between the two statutes. *See Hanenburg v. Principal Mut. Life Ins. Co.,* 118 F.3d 570, 574 (8th Cir. 1997); *Moss v. Advance Circuits, Inc.* 981 F. Supp. 1239, 1245 (D. Minn 1997); *Sigurdson v. Isanti County*, 386 N.W.2d 715, 719 (Minn. 1986). Thus, for purposes of this motion, the Court will address both sets of claims by its analysis under Title VII.

Plaintiff further claims that Defendant is liable for battery committed by its agents and that Defendant is liable for negligent retention and negligent supervision.

**b. Negligent Retention/Negligent Supervision**

The theory of negligent supervision is defined as "an employer's duty to control his or her employee's physical conduct while on the employer's premises or while using the employer's chattels, even when the employee is acting outside the scope of employment, in order to prevent intentional or negligent employment of personal injury." *Mandy v. Minnesota Mining and Mfg.*, 940 F. Supp. 1463, 1471 (D. Minn. 1996) (quoting *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 534 (Minn. 1992)). Negligent retention occurs when "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Mandy*, 940 F. Supp. at 1470.

The Court concludes that summary judgment is appropriate in Plaintiff's claims of negligent supervision and negligent retention because the Minnesota Human Rights Act preempts these claims. The MHRA contains an exclusivity of remedies provision, and the Court finds that Plaintiff cannot pursue both the MHRA and negligence claims simultaneously. *See* Minn. Stat § 363.11. The MHRA preempts a common law cause of action if: (1) the factual basis and injuries supporting the common law claim also would establish a violation of the MHRA; and (2) the obligations the defendant owes to the plaintiff, as a practical matter, are the same under both the common law and the MHRA. *Pierce v. Rainbow Foods Group, Inc.*, 158 F. Supp. 2d 969 (D. Minn. 2001) (finding that negligent retention and negligent supervision claims are preempted by the MHRA).

Here, the factual basis and injuries supporting Plaintiff's negligent retention and supervision claims also serve to establish her retaliation claims under Title VII and the MHRA. To support her MHRA claims, Plaintiff alleges that she endured repeated name-calling, offensive cartoons, kicking and grabbing, and a bombardment of objects thrown at and around her. To support her negligent retention and negligent supervision claims, Plaintiff alleges that her toolbox was thrown at her forcefully; that her tire was slashed by a co-worker; and that she suffered financial, physical, and emotional damages. Plaintiff asserts that the factual basis for the two claims are similar, but not identical. The distinction Plaintiff attempts to make, however, is so fine as to be non-existent; as a practical matter, Plaintiff's claims are based on the same facts, however heinous they may be.

Furthermore, the duty of care that Defendant owed Plaintiff under the MHRA claim was to provide a working environment free from unfair discriminatory practices. Minn. Stat. § 363.03(2)(c). The duty of care that Defendant owed Plaintiff under her negligent retention and negligent supervision claims was to prevent other employees from engaging in unfair discriminatory practices. *Moss v. Advance Circuits, Inc.*, 981 F. Supp. 1239, 1252 (D. Minn. 1997). Again, as a practical matter, these obligations are the same.

**c. The Collective Bargaining Agreement**

Defendant challenges Plaintiff's claim on the grounds that the arbitration provision within the Collective Bargaining Agreement ("the CBA"), to which Plaintiff is subject, requires that the instant claims be submitted to arbitration. The provision states:

> This agreement represents the full and complete understanding of the parties and both the Company and the Union waive any right they might otherwise have to compel the other party to bargain over any matter whatsoever . . . . If a dispute arises over the interpretation or application of any terms of this Agreement, said

> dispute, to be recognized, shall be submitted to the grievance procedure in the following manner: (A five-step grievance procedure follows).

With respect to discrimination, the CBA also includes the following provision:

> Neither the Union nor the company will tolerate discriminatory or harassing treatment of others. Situations such as these will be investigated by the Company and appropriate discipline will be imposed.

Both parties rely on the Supreme Court's decision in *Wright v. Universal Maritime Services Corp.*, 525 U.S. 70 (1998), as the most recent and authoritative statement of law. *Wright* involved the issue of whether a general arbitration clause in a collective bargaining agreement committed an Americans with Disabilities Act claim to arbitration. The court in *Wright* found that a waiver of employee rights to a federal judicial forum for employment claims must be "clear and unmistakable." *Id.* at 82.

Defendant relies in part on the Supreme Court's recent decision in *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S. Ct. 1302 (2001), as proof that the U.S. Supreme Court recently reaffirmed its commitment to enforcing arbitration provisions in the employment context. This Court notes that the arbitration provision in *Circuit City* specifically stated that, by signing the agreement, employees waived "claims under federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and the law of tort." *Id.* at 1306. The provision in *Circuit City* is clearly distinguishable from that in the case at hand. The CBA in this case does not expressly reference the nature of the claims at issue nor the specific statutes invoked. As such, the Court finds the CBA does not provide a clear and unmistakable waiver of Plaintiff's instant claims.

Moreover, the CBA in this case contains an anti-discrimination policy that instructs any employee who believes that he or she has experienced discriminatory or harassing behavior to report such circumstances to the Human Resources Department. This provision expressly directs that complaints, such as Plaintiff's complaints of sexual harassment, be channeled through a procedure distinct from the union grievance procedure set forth in the CBA. The inclusion of such a provision in the CBA does not serve to indicate a waiver of employee rights to a judicial forum. Rather, by its express terms, a procedure alternative to the arbitration and grievance process is imposed. The Court cannot find that provision of an alternative process constitutes or contributes to a clear and unmistakable waiver of a judicial forum. Accordingly, the Court finds that Plaintiff properly followed Defendant's procedures, and when these procedures produced little or no results, Plaintiff legitimately sought redress in federal court.

**d. Retaliation**

In order to establish a claim of retaliation, Plaintiff must show that: (1) she engaged in a protected activity; (2) adverse employment action occurred; and (3) there is a causal connection between the two. *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir. 1980), *cert. denied*, 450 U.S. 979 (1981); *Scusa v. Nestle U.S.A. Co., Inc.,* 181 F. 3d 958, 968 (8th Cir. 1999).

Plaintiff asserts that she engaged in protected activity when she repeatedly reported harassment to her foremen, their supervisors, human resource personnel, and other management employees at Defendant's plant. In its brief, Defendant does not dispute that Plaintiff engaged in statutorily protected activity.

Plaintiff contends that adverse employment action occurred when she was ostracized and threatened by her co-workers, harassed to the point of a significant disruption in her working conditions, and intimidated by her co-workers, all of which culminated in a constructive

discharge. *See, e.g., Smith v. Hennepin Technical Center,* 1988 WL 53400 at *17-18 (D. Minn. May 26, 1988) (noting that adverse employment action may occur when harassment has the effect of creating an "intimidating, hostile or offensive . . . environment").

Plaintiff asserts that there is a causal connection between the protected activity and adverse employment action because after she reported the activity to two shift supervisors, three union leaders, one human resources representative, and the human resources manager, the harassment worsened, and she began to fear for her safety.

Specifically, Plaintiff maintains that *after* she reported the harassment, and her co-workers were given a verbal warning, she was told by co-workers that she was "not bulletproof" and was called a "bitch," "fucking bitch," "snitch," and "troublemaker." Furthermore, Plaintiff asserts that her co-workers glared and laughed at her, ignored her, refused to assist her with tasks, and pounded hammers and crushed cans directly behind her in order to startle her. Plaintiff alleges that this behavior escalated each time she was pulled off the floor by her supervisor to discuss her legal claims.

While the Court agrees with Defendant's contention that, "not everything that makes an employee unhappy is an actionable adverse action," Plaintiff suffered injury that made her more than just "unhappy." *Smart v. Ball State Univ.,* 89 F.3d 437, 431 (7th Cir. 1996). Moreover, the Defendant correctly states the law by asserting that mere ostracism is not an adverse employment action. *Manning v. Metropolitan Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir. 1997). However, what Plaintiff experienced was more than mere ostracism. Indeed, the behavior of Plaintiff's co-workers substantially and directly interfered with Plaintiff's ability to do her job.

Accordingly, Plaintiff has met her burden of establishing a *prima facie* case of retaliation, and the Court declines to issue summary judgment.

**e. Plaintiff's Battery Claim**

In order to find Defendant liable for battery, the theory of *respondeat superior* must be invoked. *Respondeat superior* assigns liability to an employer for tortious actions that are committed by an employee within the scope of employment, and thus are reasonably foreseeable. *Martson v. Minneapolis Clinic of Psychiatry and Neurology, Ltd.*, 329 N.W. 2d 306, 310 (Minn. 1982).

Plaintiff asserts that Defendant knew of the battery because she reported her co-workers' actions several times, because her supervisors witnessed the events, and because one of the perpetrators was a supervisor. Defendant contends, however, that Plaintiff's reports of the battery and Defendant's witnessing of the battery do not constitute "foreseeability" within the context of employer liability. Defendant maintains that its employees' actions must have been within the normal course of employment in order to assign liability.[5] Specifically, in order for the Court to find that the actions of its workers were "foreseeable" in this context, Defendant argues that the Court would have to determine that the employees' conduct is typical enough "that [the employer] would seem to include the loss resulting from [the conduct] among the other costs of the employee's business." *Fahrendorff ex rel. Fahrendorff v. North Homes, Inc.*, 597 N.W.2d 905, 912 (Minn. 1999).

Defendant further contends that Plaintiff has not provided the Court with sufficient, credible evidence that the alleged tortious acts were a "well-known hazard" in her field. *Marston v. Minneapolis Clinic of Neurology*, 329 N.W.2d 306, 311 (Minn. 1982). The Court rejects

---

[5] At oral argument, Defendant's counsel seemed to assert that if Defendant had knowledge of the battery, it was only of one incident of Plaintiff being kicked in the behind, not of several incidents. This Court finds that *any* contact of this sort is inappropriate, whether it happened once or several times, and the allegations are sufficient to grant Plaintiff her day in court.

Defendant's argument that, because throwing of implements and grabbing and kicking are not known risks in the industry of air conditioning manufacturing, the alleged incidents are unforeseeable. Defendant's position so stiffly and blindly interprets the law that it ignores the most reasonable application to the facts in this case. The "industry" in this case is the very plant where Plaintiff works. The Court agrees that the nature of the plant's business does not put Defendant on notice of the first copper bend that is thrown. However, if and once the management becomes aware of the atmosphere within its very plant, and if it is as Plaintiff has described, then it baffles the Court that Defendant could argue that it was not foreseeable that such behavior, without prompt and effective intervention, would continue.

When viewed in the light most favorable to Plaintiff, there is significant dispute about whether Defendant was aware of its employees' behavior and thus could foresee the incidents of which Plaintiff complains. As the Minnesota Supreme Court said in *P.L. v. Aubert*, "it should be a question of fact whether the acts of [defendant] were foreseeable, related to and connected with acts otherwise within the scope of employment." 545 N.W.2d 666, 667-68 (Minn. 1996). Thus, the Court declines to grant summary judgment on Plaintiff's claims of battery.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. No. 46) is **GRANTED IN PART** and **DENIED IN PART** such that:

   a. Count IV is **DISMISSED WITH PREJUDICE**; and

   b. Defendant's motion is **DENIED** in all other respects.

Dated: October 30, 2001

DONOVAN W. FRANK
Judge of United States District Court